UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTOPHER ZINGLE, | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-30166-KPN |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| Defendant | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S MOTION
TO AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 8 and 11)
September 16, 2011

NEIMAN, U.S.M.J.

    This is an action for judicial review of a final decision by the Commissioner of the

Social Security Administration ("Commissioner") regarding an individual's entitlement to

Supplemental Security Income ("SSI") pursuant to 42 U.S.C. §§ 405(g).  Christopher

Zingle ("Plaintiff") asserts that the Commissioner's decision denying him such benefits -

- memorialized in a February 25, 2010 decision of an administrative law judge -- is not

supported by substantial evidence.  Plaintiff has filed a motion for judgment on the

pleadings and the Commissioner, in turn, has moved to affirm.

    The parties have consented to this court's jurisdiction.  *See* 28 U.S.C. § 636(c);

Fed. R. Civ. P. 73.  For the following reasons, the court will deny Plaintiff's motion and

1

allow Defendant's motion to affirm.

## I. S<small>TANDARD OF</small> R<small>EVIEW</small>

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

II. B<small>ACKGROUND</small>

On February 12, 2007, Plaintiff filed an application for SSI benefits, alleging a disability onset date of August 29, 2001.  (Administrative Record ("A.R.") at 107 and 152).  Plaintiff claimed that he was disabled due to the effects of pinched nerves in his wrists, a head injury, knee problems, and a variety of mental impairments including bipolar disorder and attention deficit hyperactivity disorder ("ADHD").  (A.R. at 165, 194, 207-210.)  After Plaintiff's claim was denied both initially and upon reconsideration, he requested a hearing in front of an administrative law judge (hereinafter "ALJ"), which occurred on February 22, 2010.  (A.R. at 35.)

At the time of the hearing, Plaintiff, twenty-six years old at the time, testified that he had obtained a high school equivalency degree in 2005 (A.R. at 29, 170) and had, on limited occasions, worked odd jobs (A.R. at 90, 251).  Plaintiff's turbulent and at times traumatic personal history was also recounted; Plaintiff had been the victim of both serious physical and emotional abuse (A.R. at 224) and, at the age of eighteen, Plaintiff was incarcerated for five years for a sex-related crime and remains on probation through April of 2012 (A.R. at 237-238, 253).

During a line of questioning from the ALJ, Plaintiff conceded that there were no real physical impairments that made him unable to work.  (A.R. at 79).  Nonetheless, Plaintiff maintained that his mental impairments prevented him from working.  Plaintiff claimed that his quickness to anger, seizures, sensitivity to chemicals, and depression, which could lead him to miss work frequently, made him unable to engage in substantial gainful activity.  (A.R. at 75-76, 79, 82.)

3

In a decision dated February 25, 2010, the ALJ denied Plaintiff's claim. (A.R. ay 14-30.) The ALJ found that Plaintiff's bipolar disorder, mood disorder, post-traumatic stress syndrome, ADHD, and possible seizure disorder were severe impairments. (A.R. at 19.) The ALJ found, however, that these impairments did not individually or in combination meet or equal an entry on the Listing of Impairments (A.R. at 27; *see* 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.) The ALJ further found that Plaintiff had the ability to perform a full range of unskilled work at all exertional levels, limited to work that did not involve an exposure to unprotected heights or hazardous machinery and only required occasional contact with others and no contact with the public. (A.R. at 28.) Finally, the ALJ found that, in light of Plaintiff's age, education, work experience, and residual functional capacity, there existed a significant number of jobs in the national economy that he could perform. (A.R. at 29.) Accordingly, the ALJ concluded that Plaintiff was not disabled.

III. DISCUSSION

Eligibility for SSI requires a showing of both disability and financial need. *See* 42 U.S.C. § 1381a. At issue is the ALJ's conclusion that Plaintiff is not disabled within the meaning of the Social Security Act ("the Act"). For the reasons described below, the court finds that, while it has some concerns about the conduct of the hearing, the ALJ's findings were based upon substantial evidence of record.

A. Disability Standard and the ALJ's Decision

The Act defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which . . . can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A).  An individual is considered disabled under the

Act

> only if his physical and mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 1382c(a)(3)(B); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146-49

(1987).

In determining disability, the Commissioner follows the five-step protocol

described by the First Circuit as follows:

> First, is the claimant currently employed?  If he is, the
> claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment?  A
> "severe impairment" means an impairment "which
> significantly limits the claimant's physical or mental capacity
> to perform basic work-related functions."  If he does not
> have an impairment of at least this degree of severity, he is
> automatically not disabled.
>
> Third, does the claimant have an impairment equivalent to a
> specific list of impairments in the regulations' Appendix 1?  If
> the claimant has an impairment of so serious a degree of
> severity, the claimant is automatically found disabled.
>
> . . . .
>
> Fourth . . . does the claimant's impairment prevent him from

performing work of the sort he has done in the past?  If not,
he is not disabled.  If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from
performing other work of the sort found in the economy?  If
so he is disabled; if not he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions:
Plaintiff has not engaged in any substantial gainful activity since the alleged onset of
his disability (question 1); Plaintiff has severe impairments due to his bipolar disorder,
mood disorder, post traumatic stress disorder, ADHD, and possible seizure disorder
(question 2); Plaintiff's impairments did not meet or equal a listed impairment (question
3); Plaintiff has the residual functioning capacity to perform a full range of unskilled
work at all exertional levels, which involve no exposure to unprotected heights or
hazardous machinery, only occasional contact with others, and no contact with the
public (question 4); and Plaintiff was able to perform other work that exists in significant
numbers in the national economy (question 5).  Therefore, the ALJ found, Plaintiff was
not disabled within the meaning of the Act.

B.  Conduct of Hearing

Plaintiff first argues that the ALJ's decision was predicated on an error of law
arising out of the ALJ's conduct at the administrative hearing.  The ALJ, Plaintiff
asserts, conducted the hearing in a manner that was more adversarial than inquisitorial
and subsequently based his decision on small portions of the record taken out-of-
context.  For its part, the court finds that, while the Plaintiff raises some legitimate

concerns, the ALJ's actions do not necessitate remand or reversal.

The duties of an administrative law judge differ from those of judges in traditional adversarial courts.  As the Supreme Court has explained, "Social Security proceedings are inquisitorial, rather than adversarial.  It is the administrative law judge's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  This duty arises because the Commissioner has no representative at such hearings and, thus, the administrative law judge is in the best position to make sure that the strongest arguments for or against a claim are heard.  *Id.*  The First Circuit, too, has recognized that "social security proceedings are not strictly adversarial."  *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 142 (1st Cir.1987) (inquisitorial nature of the proceedings justifies the "insistence that the Secretary bear a responsibility for adequate development of the record in these cases."); *see also Deblois v. Secretary of Health and Human Services*, 686 F.2d 76, 80-81 (1st Cir. 1982); *Currier v. Secretary of HEW*, 612 F.2d 594, 598 (1st Cir. 1980).

Regulations promulgated pursuant to the Act provide additional insight into an administrative law judge's responsibilities.  First, an administrative law judge must "look fully into the issues" by questioning witnesses and accepting material evidence into the record.  20 C.F.R. § 416.1444.  Second, the administrative law judge has rather broad discretion in how to conduct a hearing; the judge may discuss issues, call witnesses, and ask questions in the order he or she wishes.  *Id.*

As for the instant matter, the court, after reviewing the briefs and the transcript,

agrees that, at times, the ALJ acted in a questionable manner during the course of the hearing.  First, the ALJ was quick to interrupt the questioning by Plaintiff's attorney.  (*See* A.R. at 43, 65, 73.)  While, as mentioned, administrative law judges have the freedom to conduct questioning in the order they choose, some of the ALJ's interruptions here seem unnecessarily abrupt.  Still, nothing about the ALJ's interruptions create a reason for remand or reversal, especially given the typically informal nature of such hearings and the fact that Plaintiff's attorney had sufficient opportunity to ask questions.

Second, the ALJ acted aggressively at certain times with Plaintiff, his attorney, and his witness.  The ALJ threatened Plaintiff's attorney with contempt, peppered Plaintiff with questions and, among other things, showed contempt for Plaintiff's witness.  (A.R. at 45-47, 70-71, 78.)  In the court's opinion, however, these actions did not rise to the level of misconduct which would warrant reversal or remand; there were no displays of bias and the aggressive questioning arose as the result of Plaintiff's unclear and inconsistent answers to direct questions.

To be sure, Plaintiff portrays his own exchanges with the ALJ as frustrating him to the point of blurting out something he did not mean, most specifically, that he could not perform laundry work because it was not manly labor.  (A.R. at 73-78, 84-85, 87.)  A fair reading of the transcript, however, does not bear out Plaintiff's argument; in this court's view, the ALJ needed to repeatedly inquire into Plaintiff's ever-changing responses, thereby gaining new information and, ultimately, raising doubts about his answers.  As examples, the ALJ learned that Plaintiff had no corroborated exertional

limitations, that he was able to control some of his mood swings through medication, that he was able to keep doctor's appointments, that he had worked odd jobs, that he had a personal objection to the type of work suggested by the ALJ, and that his main problem with maintaining employment was dealing with other people.  In short, the ALJ's questions and Plaintiff's answers filled out the record and provided appropriate evidence.

C. Substantial Evidence

As the parties know, the court can only order reversal, modification or remand if an administrative law judge's decision was not supported by substantial evidence in the record.  The court may only "invalidate findings of fact which are derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Bazille v. Apfel*, 113 F.Supp.2d 181, 184 (D. Mass. 2000) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)).

Here, Plaintiff claims broadly that the ALJ mischaracterized evidence and selectively chose portions of the record to support his decision. The court's review of the entire record, however, shows that the ALJ duly considered and evaluated all evidence in the record properly.  First, the ALJ took time to outline and note the important features of the medical evidence offered and described the evidence accurately.  (*See* A.R. at 20-23, 249-259, 277-283, 294-308, 315-337.)  In the end, the ALJ's findings that Plaintiff suffers from severe impairments is supported by the reports of Dr. Robert Dean, Dr. Bruce Eggleston, and Dr. Ali Moshiri, each of whom conclude that Plaintiff has some significant mental impairments, although some were unclear

about the diagnosis and level of severity.

Second, the ALJ found accurately that none of Plaintiff's impairments met or equaled an impairment listed in 20 C.F.R Part 404, Subpart P, Appendix 1. *See* 20 C.F.R § 416.920. To be sure, Plaintiff argues that the ALJ improperly discounted two marked limitations found by Dr. Moshiri, thus improperly denying a finding of disability. *See* section 12.04(B) (claimant must have "marked" impairments in two of the following of four categories to be disabled: (i) activities of daily living, (ii) maintaining social functioning, (iii) maintaining concentration, persistence or pace, or (iv) repeated episodes of decompensation). The court disagrees.

A review of the record reveals that the ALJ considered and evaluated the relevant medical evidence and testimony, made specific findings for each functional area, and substantiated those findings expressly or through reference to evidence summarized earlier in his decision. *See* 20 C.F.R. § 416.920a(e)(4) (an administrative law judge's decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described."). Granted, the task of evaluating a mental impairment such as the Plaintiff's is undoubtedly difficult and complex. 20 C.F.R. § 416.920a(c)(1) (the determination of severity is made through the "complex and highly individualized process that requires [the ALJ] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation.").

10

But here, the court finds, the ALJ appropriately found, given all the evidence, that

Plaintiff's impairments were not "marked" in two of the functional areas.

The medical opinions in the record all acknowledge that Plaintiff has various

mental impairments, but most do not provide a specific diagnosis, are ambiguous about

severity, or simply rely upon Plaintiff's subjective reports.  For example, Dr. Eggelston's

report gives a thorough analysis of Plaintiff's mental condition, yet raises some flags

concerning the severity of his limitations, even suggesting that Plaintiff may be

"malingering" or trying to portray a negative image of himself as a "cry for help."  (A.R.

at 317.)  Still other evidence supports the ALJ's finding that Plaintiff's symptoms are not

as severe as portrayed: Dr. Dean reported that Plaintiff worked odd jobs, exercised

regularly, and attended AA meetings frequently (A.R. at 251-254), and Dr. Moshiri

reported that Plaintiff's medication controlled his mood fluctuations (A.R. at 306).

Plaintiff himself testified that he has a girlfriend, socializes with a group of friends, is

able to make doctors' appointments under any conditions, and is in a pretty good mood

most of the time; he also testified that his medication controls his mood swings within

half an hour.  (A.R. at 80-82, 85-87.)  The ALJ, the court finds, duly considered all this

evidence in making his determination that none of Plaintiff's impairments met or

equaled a listed impairment.

The court also finds that the ALJ's decision with respect to Plaintiff's residual

functioning capacity was based on substantial evidence.  Even though the ALJ did not

find Plaintiff's report of his symptoms to be fully credible, he took sufficient steps to

ensure that his conclusion with respect to Plaintiff's residual functioning capacity

adequately reflected the severity of the impairments.  In particular, the ALJ included the limitation that "the job must be isolated from the public and have only occasional contact with others" (A.R. at 28), thereby reflecting Plaintiff's own assertion that he could not deal with other people in a work environment.  Thus, notwithstanding Plaintiff's arguments, the ALJ did not ignore Plaintiff's symptoms; rather the ALJ crafted a residual functioning capacity that reflected a reasonable interpretation of Plaintiff's actual limitations.

Persevering, Plaintiff argues that the ALJ improperly discounted his testimony regarding the nature and impact of his limitations.  Plaintiff also argues that the ALJ's credibility evaluation was laced with bias and unfairly focused on certain parts of Plaintiff's testimony to the exclusion of certain medical evidence.

An administrative law judge, of course, must consider a claimant's subjective allegations of pain and functional limitations, but he is not required to accept those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living.  *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 194-95 (1st Cir. 1987); *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19, 22-23 (1st Cir. 1986); *Winn v. Heckler*, 762 F.2d 180, 181 (1st Cir. 1985); 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p.  Further, if an administrative law judge determines that a claimant's testimony is not credible, the judge "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]."  *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986); *see also Larlee v. Astrue*, 694 F. Supp.

12

2d 80, 85 (D. Mass. 2010).

In the instant matter, the court finds, the ALJ properly considered Plaintiff's explanations of his work limitations and weighed all the evidence of record before making a determination about his credibility.  First, the ALJ gave only secondary consideration to Plaintiff's criminal history.  *See Bass v. Astrue*, slip op., 10-CV-30057-MAP, 2011 WL 31296 (D. Mass. Jan. 4, 2011) ("While it is true that a criminal record may undermine credibility, past misconduct alone cannot in itself provide a basis for automatically rejecting testimony outright.").  Granted, the ALJ noted in his written decision that Plaintiff's criminal record caused him "to view the testimony of the trice-convicted . . . claimant with caution." (A.R. at 26.)  But nothing in the decision or the transcript itself presents any indication that the ALJ discounted Plaintiff's testimony solely because of his criminal record or unfairly used that record against him.  (A.R. at 72-104.)

Second, in contravention of Plaintiff's arguments, the ALJ spent considerable time recounting the relevant medical evidence and testimony before explaining why he found Plaintiff's testimony "less than fully credible."  (A.R. at 26.)  In particular, the ALJ discredited portions of the Plaintiff's testimony because "his activities [are] inconsistent with his allegations" and not supported by the medical evidence.  (Id.)

Third, Plaintiff's arguments to the contrary, the ALJ did not commit error when assessing Mr. Hendrick's credibility.  Mr. Hendrick is a clinical social worker, more specifically a "shelter/street therapist."  (A.R. at 43-44, 325.)  Much of his testimony, as well as a letter he submitted, focused on what he believed to be Plaintiff's inability to

sustain normal employment due to his mental impairments.  Mr. Hendrick, however,

although a licensed clinical social worker, was not Plaintiff's treating physician,

psychiatrist, or therapist.  *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (treating

physicians' opinions are only entitled to controlling weight when both medically well-

supported and not inconsistent with other substantial evidence in the record).

Moreover, Mr. Hendrick's testimony was largely anecdotal and not based on any

substantial medical foundation.  Thus, the ALJ did not discredit Mr. Hendrick's

testimony because of bias, but rather because it was incompatible with other medical

evidence of record.  For example, it became evident during the hearing that Mr.

Hendrick's opinion concerning the severity of Plaintiff's symptoms deviated from Dr.

Moshiri's opinion and that Mr. Hendrick may have been considering non-medical

information when forming his opinion about Plaintiff's ability to work, *e.g.*, that Plaintiff's

sexual offender status was a health matter that affected his residual functional abilities.

Finally, in a revealing portion of his testimony, Mr. Hendrick testified that he thought

Plaintiff "could work with the right employer who was aware of his situation and . . . if

that employer were willing to give him a lot of space and a lot of time and a lot of

attention, you'd have a good employee."  (A.R. at 67.)  When the ALJ asked Mr.

Hendrick why Plaintiff had not gone to "Mass Rehab," a vocational rehabilitation

services provider, and get "precisely into that situation," Mr. Hendrick had no answer.

(Id.)[1]  In all, the ALJ's decision to discount Mr. Hendrick's opinion was reasonable and

---

[1] "Mass Rehab" refers to the Vocational Rehabilitation Services program, part of the Massachusetts Office of Health and Human Services.  The program matches individuals with disabilities with employers that will accommodate such disabilities.

14

based on substantial evidence on the record.

As the parties know, findings concerning credibility should be upheld when they set forth an adequate basis and are supported by substantial evidence in the record. *Perez v. Sec'y of Health and Human Serv.*, 958 F.2d 445, 447-48 (1st Cir. 1991) (claimant's appearance and lack of medical evidence was sufficient basis for administrative law judge's credibility finding); *Cordero v. Chater*, 926 F. Supp. 267, 272 (D. Mass. 1996) (medical evidence and nature of testimony formed a sufficient basis for discrediting claimant's testimony regarding intensity of limitations).  After reviewing the record in light of these applicable legal standards, this court finds that the ALJ's credibility evaluation of both Plaintiff and Mr. Hendrick was proper and adequately supported by the record.

## IV. CONCLUSION

Although, as indicated, Plaintiff raised legitimate questions about the ALJ's conduct, the ALJ, for the reasons stated, did not commit an error of law and his conclusions were based on substantial evidence.  Accordingly, Plaintiff's motion for judgment on the pleadings is DENIED and the Commissioner's motion to affirm is ALLOWED.

IT IS SO ORDERED.

DATED: September 16, 2011

   /s/ Kenneth P. Neiman
   KENNETH P. NEIMAN
   U.S. Magistrate Judge